

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

September 15, 2023

**Via ECF:**
The Honorable J. Paul Oetken, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   ***Luque, et al v. Z&S Deli Inc., et al.***
          Civil Docket No.: 22-cv-03043(JPO)

Dear Judge Oetken:

Our office represents Tomas Luque and Gilberto Solano Menez ("**Plaintiffs**") in this FLSA Action, and we respectfully submit this motion, jointly with counsel for Z&S Deli Inc. d/b/a Super Deli Market, and Radha Rampersad, and Ria Rampersad (collectively hereinafter, "Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached following extensive settlement discussions throughout pendency of this matter by counsel for the parties.

The parties respectfully submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement. The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court approve the parties' Settlement Agreement.

## I.   The Settlement Terms

The parties have agreed to resolve all claims asserted in this action for the global amount of $20,000.00, which is inclusive of all wages, penalties, attorneys' fees, and expenses (each of which are addressed below). The settlement funds are to be paid over a 4-month period: four consecutive monthly payments of Five Thousand Dollars ($5,000) each, the first of which is to be paid within 30 days of the Court's approval herein.

## II.   The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

1. **The Plaintiffs' range of possible recovery:**

   a. **Plaintiffs' Position**

   Plaintiffs brought this action against the Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiffs alleged that (i) they were not paid proper overtime compensation when they worked in excess of forty (40) hours per week for Defendants; (ii) they were paid at a rate which fell below the applicable federal and state minimum wage requirements; and (iii) they were not paid spread of hour compensation as required by law.

   Plaintiffs' claims arise out of their employment by the Defendants at Z&S Deli, located at 1474 York Ave., New York, NY, 10075. The Complaint also alleges that the individual Defendants named hereto were Plaintiffs' employers within the meaning and intent of the FLSA.

   Under the FLSA and NYLL, Plaintiffs' federal and state law claims are subject to statute of limitations periods of 3 and 6 years from the date of the filing of the Complaint, respectively. This Complaint was filed in April 2022. As such, the relevant statutory period for Plaintiffs' claims asserted herein encompasses the entirety of the period spanning from April 2016 through present (hereinafter, the "relevant statutory period.").

   Plaintiff Luque alleges that he was employed by Defendants to work at Z&S Deli from in or around December 2013 until in or around February 2022. Plaintiff Luque alleges he regularly worked five (5) days per week during the relevant statutory period.

   During the relevant statutory period, Plaintiff Luque alleges that he regularly worked a schedule of shifts beginning at approximately 6:00 a.m. each workday and regularly ended at approximately 6:00 p.m., or later, five (5) days per week, for a total of approximately sixty (60) hours per week that he worked for Defendants during the relevant statutory period.

   Plaintiff Luque alleges that he was paid by Defendants a flat weekly rate – without regard for the number of hours Plaintiff Luque regularly worked each day, or each week – in the flat weekly rate of approximately $400.00 per week for all hours worked from in or around April 2016 until in or around December 2017; and approximately $12.00 per hour without regard for the number of hours worked from in or around January 2018 until in or around February 2022.

   Plaintiff Menez alleges that he was employed by Defendants at Z&S Deli from in or around July 2009 until in or around March 2020. Plaintiff Menez alleges that he regularly worked six (6) days per week during the relevant statutory period.

   During the relevant statutory period, Plaintiff Menez alleges that he regularly worked a schedule of shifts beginning at approximately 6:00 a.m. each workday and regularly ended at approximately 4:00 p.m., or later, five (5) days per week,  Plaintiff Menez also worked a schedule of shifts beginning at approximately 6:00 a.m. each workday and regularly ended at approximately 6:00 p.m., or later, once per week.  Thus, Plaintiff Menez alleges that he was regularly required to work approximately sixty-two (62) hours per week during the relevant statutory period.

Plaintiff Menez alleges that he was paid by Defendants a flat weekly rate – without any regard for the number of hours that Plaintiff Menez regularly worked each day, or each week – in the flat weekly rate of approximately $660.00 per week for all hours worked from in or around April 2016 until in or around December 2016; and approximately $15.00 per hour without regard for the number of hours worked from in or around January 2017 until in or around March 2020.

Based on the foregoing, Plaintiffs allege that although they regularly worked for the Defendants in excess of forty (40) hours per week during the relevant statutory period, Defendants failed to pay Plaintiffs at a wage rate of time and a half (1.5) for each of their hours regularly worked over forty (40) in a work week, in violation of the overtime provisions contained in the FLSA, and the NYLL. The Plaintiffs' above pay never changed, nor increased, despite the fact that Plaintiffs allege regularly working overtime hours for the Defendants, and that they received no additional compensation for these overtime hours.

Moreover, Plaintiffs allege that Defendants willfully failed to pay Plaintiffs the legally prescribed minimum wage for all hours worked during the statutory period, in violation of the minimum wage provisions contained in the FLSA and NYLL, and its regulations. Furthermore, Plaintiffs alleged that although they each worked shifts in excess of ten (10) hours, or more hours per day at an average of 6 days per week for Plaintiff Luque and 1 day per week for Plaintiff Menez, nonetheless, the Defendants did not pay Plaintiffs an extra (1) hour at the basic minimum hourly rate prescribed during for each day Plaintiffs worked over ten (10) hours, in violation of the spread of hours provisions contained in the NYLL.

Based on the above allegations, Plaintiff Luque alleged approximately: $71,322.86 in unpaid overtime wages, approximately $23,942.86 in total minimum wages owed, and $24,438.86 in unpaid Spread of hour compensation. Based on the above allegations, Plaintiff Menez alleged approximately: $71,629.71 in unpaid overtime wages, and approximately $2,575.29 in unpaid Spread of hour compensation.

In sum, Plaintiffs alleged a collective total of $193,909.57 pursuant to the FLSA/NYLL. This figure, however, assumed that the Plaintiffs would be 100% successful in establishing all of their claims as to the dates of their employment, the hours worked each and every week of the relevant statutory period, and proving that their did not receive any proper overtime, minimum wage and/or spread of hour compensation during this statutory period.

Although Plaintiffs believed that they could recover on all their above claims, Plaintiffs preferred a guaranteed payment through a Court-approved settlement. Plaintiffs understood the significant risks of continued litigation and recognized the factual disputes as to the dates of their employment, the number of hours worked each week and the rate of pay that they received, as well as any defenses raised by Defendants that Plaintiffs were not entitled to additional compensation, including overtime pay.

The fact that these factual and legal disputes may not have been resolved until a trial at a later date heavily favored the Plaintiffs' decision to settle in the litigation process. Furthermore, Plaintiffs considered the economic realities of the Defendants' restaurant business and the

possibility of obtaining a judgment on which they would not be able to collect at a much later time in the future absent the instant agreement.

### b. Defendants' Position

Defendants acknowledged potential liability but disputed the amount due. The parties had genuine, bona fide disputes over the hours worked by Plaintiffs and the amounts of pay received by Plaintiff but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Furthermore, Defendants alleged they were not in a good financial position. However, the settlement amount considers this position, and falls squarely in the realistic, possible range of settlement and accounts for the financial realities of Defendants' business. Defendants produced ample financial records to show the limited pool of funds available for a settlement and produced other documentation to show the current limited sources of income of the individual defendants. Defendant Radha has extremely limited assets to fund a settlement as the business is closed.

Party depositions were taken in this case, which revealed significant factual disputes, including those mentioned above, as well as the actual involvement of each of the individual Defendants in the daily business operations during the statutory period, and Defendants' business' economic realities. Lastly, Defendants contend that Defendant Ria, who is the daughter of Defendant Radha, was not involved in the business. Defendants provided documentation as to Defendant Ria's employment such that she could not have possibly been Plaintiffs' employer during the relevant statutory period. Furthermore, Defendants were prepared to produce five or six witnesses who were prepared to testify that Ria had no involvement in the operation of the business and did not employ Plaintiffs due to other professional obligations.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter for $20,000.00. The parties believe that this amount is reasonable considering the claims and defenses asserted by the parties as well as the economic realities of the Defendants' business. Moreover, the settlement was only reached following extensive settlement discussion and negotiations among the parties. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiffs, the wages

paid to Plaintiffs and the dates of Plaintiffs' employment, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement.

2. **The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":**

Had the parties not reached a settlement, both sides faced significant additional time and expenses for their trial. As the settlement was reached following the discovery phase of litigation, resolution avoided anticipated significant and additional time and costs associated with preparing and conducting their trial. Both parties would have been required to appear at trial for one or more days. Plaintiffs would have incurred expenses preparing exhibits for trial, hiring court-certified interpreters and conducting the trial. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

3. **The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter. Although Plaintiffs were confident that they could succeed on all their claims, Plaintiffs recognized the possibility of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. The seriousness of this risk favored the settlement for Plaintiffs especially in the early stages of litigation.

Defendants also faced the risk of having a judgment entered at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys' fees.

4. **Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties attended mediation through the SDNY Mediation program on October 20, 2022. While the parties were unable to reach a settlement at that time, the parties continued to engage in discovery and party depositions, simultaneous with their continued good faith settlement negotiations over the course of months. These settlement efforts eventually culminated in the parties reaching a settlement after nearly a year of continuing to engage in negotiations.

Both parties are represented by counsel who specialize in FLSA and NYLL matters and have resolved many related cases in both New York state and federal courts.

The Agreement was the product of extensive arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality clauses or releases of claims unrelated to the wage-and-hour claims asserted in this matter and comports with *Cheeks* and Second Circuit case law.

5. **The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

## II. <u>Distribution to the Plaintiffs and Requested Attorneys' Fees and Expenses</u>

### a. Distribution to Plaintiffs

The parties agreed to a settlement of $20,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiff Luque will recover $5,931.65, and Plaintiff Menez will recover $5,931.65 (collectively, $11,863.30), after requested attorneys' fees ($5,931.65), and reimbursement of costs ($2,205.05). Plaintiffs will receive a proportional, near equal share of the settlement proceeds as Plaintiffs alleged similar date ranges of employment, hours worked, and pay received.

### b. Plaintiffs' Counsel's Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $2,205.05 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $402.00; and
- costs of service of the Summons and Complaint on Defendants in this matter: $675.00; and
- the costs relating to the conducting of party depositions in this matter, $1,128.05.

Accordingly, Plaintiffs' counsel respectfully requests one-third of the settlement amount less the above expenses ($2,205.05), or $8,136.70 in total attorneys' fees and costs, as agreed upon in the Plaintiffs' retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees, and expenses, in this matter is $8,136.70.

The settlement funds broken down into their component parts is as follows:

**Settlement Amount:** $20,000.00
**Attorneys' Expenses:** $2,205.05
**Net Settlement Amount:** $17,794.95
**Requested Attorneys' Fees:** $5,931.65
**Total payable to Attorneys:** $8,136.70
**Total payable to Plaintiffs:** $11,863.30
    1. Total to Plaintiff Luque: $5,931.65
    2. Total to Plaintiff Menez: $5,931.65

Plaintiffs' attorneys and their clients have retainer agreements that are reduced to writing and are signed by the Plaintiffs. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this

Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

As explained above, this request for attorneys' fees is supported by the work performed by the Plaintiffs' counsel and the recovery secured through their efforts. Plaintiffs' counsel has advocated for their client throughout the negotiation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

### III. Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable, and that this settlement is the product of extensive good faith negotiations among the parties. Both parties were represented by experienced and competent counsel who specialize in this area of law and the early settlement allows both sides to avoid the anticipated costs and burdens of protracted litigation. As such, we respectfully request that the Court approve the Settlement Agreement in its entirety.

We thank the Court for its kind consideration on this matter, and we and remain available to provide any additional information.

Respectfully submitted,

*Avraham Y. Scher*
Avraham Y. Scher, Esq.